# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

TADEUSZ NIEMYJSKI,

        Plaintiff,

vs.                                              No. CIV 03-1377 JB/LFG

CITY OF ALBUQUERQUE and COUNTY
OF BERNALILLO d/b/a BERNALILLO COUNTY
DETENTION CENTER and JOHN DOES 1 through 4,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant City of Albuquerque's Motion for Summary Judgment and Memorandum of Law in Support, filed November 30, 2004 (Doc. 27). The Court held hearings on this motion on January 7, January 18, and February 17, 2005. The *pro se* Plaintiff, Tadeusz Niemyjski, did not file a response to the motion. Niemyjski did not appear in person or telephonically for the January 7th and February 17th hearings. Although Niemyjski appeared in person for the January 18th hearing, he was not prepared to present oral argument on the Defendant City of Albuquerque's ("the City") motion for summary judgment. The Court later sent out a notice stating that, if it deemed argument on his motion helpful or necessary, that argument would take place at the February 17th pre-trial conference. Niemyjski still did not file any response to the City's motion. Consistent with the Court's ruling at the February 17th hearing on this motion, and for the reasons given at the time of the hearing, the Court will grant summary judgment on all federal claims. Having dismissed all claims on which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining state claims under 28 U.S.C. §

1367(c) and remands all remaining claims -- all of which sound in state law -- to state court.

## FACTUAL BACKGROUND

The City, only for purposes of this motion for summary judgment, admits the following facts.

On October 11, 2001, Niemyjski failed to appear at the Bernalillo County Metropolitan Court for a hearing in case TR 62710/01 regarding a citation.  See Deposition of Tadeusz Niemyjski at 51:7-21 (taken October 20, 2004)(hereinafter "Niemyjski Depo.").  The Honorable Victoria J. Grant, Bernalillo County Metropolitan Judge, issued a warrant for Niemyjski's arrest because of his failure to appear, which included a $350 cash or surety bond.  See Bernalillo County Metropolitan Court Bench Warrant, at 1.[1]  On the morning of November 5, 2001, Niemyjski appeared at the Bernalillo County Metropolitan Court.  See Complaint ¶ 9, at 2, filed in the Second Judicial District, Bernalillo County, New Mexico, CV 2003 07555, on November 4, 2003; Niemyjski Depo. at 51:25 - 52:1. According to Niemyjski, he could not remember on which date a hearing[2] was scheduled and had gone to the Metropolitan Court that day to inquire.  See Niemyjski Depo. at 52:13-15.  Niemyjski testified that, while at the clerk's window, he was arrested on the warrant.  See id. at 52:5-10; id. at 112:9-18.[3]  It is not clear whether the possibility of paying the bond was discussed at the time of the

---

[1] The Bench Warrant does indicate the date.  The City represented that the state court issued the bench warrant on October 12, 2001.

[2] It is not clear from Niemyjski's deposition whether he was inquiring about the hearing set on October 11, 2001, which gave rise to the bench warrant, or another traffic violation.  For the purposes of this motion, however, the Court need not resolve this issue.

[3] Because Niemyjski did not file a response to the City's motion, the Court only has the portions of Niemyjski deposition attached to the City's motion as Niemyjski's account of the events that transpired.  "The testimony and averments of a party, however, are legally competent to oppose summary judgment, notwithstanding their inherently self-serving nature, provided they are 'based on personal knowledge and set forth facts that would be admissible in evidence.'"  Kirk v. City of Tulsa, No. 02-5138, 2003 WL 21662097, at **3 (10th Cir. July 16, 2003)(unpublished decision)(quoting

arrest, <u>see</u> <u>id.</u> at 54:18 - 55:11, but Niemyjski testified that he did not have $350 -- the requisite bond amount -- on him, <u>see</u> <u>id.</u> at 55:14-24.

  Niemyjski was placed in a holding cell at the Bernalillo County Detention Center ("BCDC"). <u>See</u> Complaint ¶ 12, at 3.  According to Niemyjski's testimony, he asked the guards if he could make a telephone call, which the guards denied.  <u>See</u> Niemyjski Depo. at 60:23-24.  Because the guards did not permit him to make a telephone call, Niemyjski "protest[ed]" by refusing to have his photograph taken.  <u>Id.</u> at 60:19 - 61:20.  Because of this resistance, the jail guards used force to position him to take his photograph.  <u>See</u> <u>id.</u> at 60:15 - 62:1.  The guards placed handcuffs on Niemyjski.  <u>See</u> <u>id.</u> at 113:14-16.

  The guards then returned Niemyjski to his cell, <u>see</u> <u>id.</u> at 62:2-16, and, according to Niemyjski, "thr[e]w" or "push[ed]" him into the holding cell, <u>id.</u> at 67:5.  When Niemyjski was taken back to his cell, he and the guards struggled when they attempted to cuff his legs, and Niemyjski fell on his side.  <u>See</u> <u>id.</u> at 63:7-17; <u>id.</u> at 64:5 - 65:12.[4]

  At some point after being returned to the holding cell, Niemyjski and the guards traded racially based insults.  <u>See</u> <u>id.</u> at 67:12-13.  According to Niemyjski, he told the guards: "Come one all Mexicans.  We don't need clearance or whatever, so don't play games with me or playing with them.  Come on.  Apply for job[.]  You don't have to worry about clearance."  <u>Id.</u> at 67:14-17;[5] <u>id.</u>

_____

<u>Hall v. Bellmon</u>, 935 F.2d 1106, 1111 (10th Cir.1991)).

  [4] In his Complaint, Niemyjski alleges that, when he was returned to the cell, "he was punched several times."  Complaint ¶ 16, at 3.  There is nothing in the record before the court -- including the excerpts of Niemyjski's deposition -- that supports the allegation that the guards punched Niemyjski when they brought him back to the holding cell after having taken his photograph.

  [5] It appears from Niemyjski's deposition that, in using the term "clearance," he is referring to the jail guards' records and/or citizenship.  Niemyjski Depo. at 67:18 - 68:6.  Niemyjski further

at 70:1-13.  Niemyjski also testified that he called the guards "South Valley trash," in addition to

other "all kinds of comments."  Id. at 68:15-16; id. at 70:3-6.  In exchange, the jail guards called

Niemyjski a "fucking Russian."  Id. at 70:6-7.[6]

      Niemyjski was later taken from the cell to be moved to an area upstairs, but instead of taking

the elevator, the guards made Niemyjski walk up the stairs.  See Complaint ¶¶ 19-20, at 18; Niemyjski

Depo. at 71:1-7.  Niemyjski remained in handcuffs as well as leg cuffs.  See Niemyjski Depo. at

113:8-10.  The guards told Niemyjski to be quiet.  See id. at 113:4-7.  Niemyjski alleges that, while

being taken up the stairs by three or four guards, he "fell down."  Complaint ¶ 19, at 3; Niemyjski

Depo. at 71:10.  It is not clear from the record whether Niemyjski tripped, or if the guards "knocked

[his] legs out from underneath [him]."  Niemyjski Depo. at 71:17; id. at 84:3.  Niemyjski testified that

then

> all the [guards] were punching, hitting me on my side.  Anyway, I went down, and
> they started hitting, punching, kicking my knees and choking, and all different things,
> and then I knew I was fighting for my life because my neck went down to the floor,
> practically, and it was stretched, and they were pulling my hair back.  Anyway, it was
> using hands around ears and just all over the face, blocking my blood circulation and
> so on.  Just . . . .[7]

Id. at 71:18-25.  Niemyjski's fall on the stairs resulted in an injury to his ribs.  See id. at 84:1-24.

      Niemyjski telephoned a friend around 9:00 p.m. to arrange for bail.  See id. at 85:2-13.

BCDC released Niemyjski less than twenty-four hours after being arrested on the warrant.  See id.

---

testified that, in his experience, most jail guards are from Mexico and do not have their United States
citizenship.  See id. at 68:10-11.

    [6] It is not clear from the record who made the first racially based insult.

    [7] Because Niemyjski's following sentence was cut-off in the record, Niemyjski may have
continued to describe the events on the landing in further detail.  Those pages from the deposition,
however, were not provided to the Court.

at 87:2-7; id. at 112:19-23.

Niemyjski went straight from the jail -- between approximately 2 a.m. and 4 a.m. -- to the University of New Mexico Hospital.  See id. at 87:11-15.  According to Niemyjski, he suffered "[m]ultiple bruise[s] and fractures," but Niemyjski also testified that the Doctor's report was "confusing."  Id. at15-16.  The Court, however, has not been provided with a copy of the medical report from that evening documenting the injuries that Niemyjski suffered.

Niemyjski went to a doctor in January, 2004, and told the doctor that the purpose of the visit was an evaluation in preparation for this litigation.  See id. at 96:7 - 97:15.  According to Niemyjski's deposition, the doctor concluded that any pain experience by Niemyjski was because of his work in construction, which involved heavy lifting, and was not a result of the alleged incident in the jail.  See id. at 98:17 - 99:24.[8]  Niemyjski, however, testified that he did not agree with the doctor's medical opinion, because he only started to experience pain "just months after th[e] incident in the jail."  Id. at 97:16-22.

According to Michael Sisneros, Deputy Director of the Metropolitan Detention Center, the "BCDC maintained a policy, in effect throughout the year 2001, limiting the use of physical force for the security and control of inmates."  Affidavit of Michael Sisneros ¶ 4, at 1 (executed January 10, 2005)(hereinafter "Sisneros Aff.").  The BCDC Security and Control (Physical Force) Policy statement is as follows:

> The use of physical force shall be restricted to instances of justifiable defense, protection of others, protection of property and prevention of escapes, and only when it is statutory authority.  Physical force or use of restraints are never used as punishment.  A written report is prepared following all uses of force and restraints and is submitted to the Director.

---

[8]  A copy of this medical report, however, was not furnished to the Court.

-5-

BCDC Policy 8.7.0 at 1 (dated Jan. 1989, revised Dec. 2000)("Policy 8.7.0").  The Policy approves the use of varying levels of force ranging from "Step 1" ("Officer Presence") to "Step 6" ("Deadly Force").  Id. at 2.  "Step 3" force is "Control and Restraint," which includes the use of handcuffs. Id.

In the "Physical Handling or Touching" section, the Policy states that "[t]he technique of taking inmates down to the floor should be avoided[;] this technique usually results in more injuries to inmates and staff."  Id. ¶ D(1), at 3.  This section also states that "[p]hysical handling is justified to subdue unruly inmates . . . .  It may be used to move inmates who fail to obey lawful orders, and to protect property."  Id. ¶ D(5), at 3.  "As with any type of force, [however,] the amount of force used in physical handling shall be as much as is reasonable and necessary to stop the action. PHYSICAL HANDLING STOPS WHEN THE RESISTANCE STOPS."  Id. (quotation omitted). The Policy also states that the use of choke-holds and headlocks is "strictly prohibited."  Id. ¶ E, at 3.

The Policy requires an officer to submit a written report -- including "supplemental information of the incident" -- to his or her supervisor "[i]n any situation where physical force is used."  Id. ¶ H(1), at 1 (emphasis added).  See id. ¶ B, at 1 ("A written report must be submitted to the Major on all incidents where the use of force is required.  This report shall be prepared by the officer who employed force and shall be completed no later than the conclusion of his assigned shift."); Sisneros Aff. ¶ 6, at 1 ("All use of physical force by BCDC staff members required the submission of reports by all staff involved for review by supervisory personnel."); Policy 3.1.22 ¶ E(3), at 3 ("A supervisor will be notified before any use of force unless the circumstances do not allow it.  In [such a] case, a supervisor will be notified immediately after the use of force. . . . Reports

-6-

will be submitted on all use of force incidents before the employee departs his/her shift.").  "The report must include a detailed description of the events leading to the actual physical force applied, the amount and type used, the nature of the event, the nature of the injuries (if any), officer involved, witnesses, and other pertinent information."  Policy 8.7.0 ¶ H(2), at 5.

Sisneros contends that "[a]ll staff members of [BCDC] were required to receive training in the legitimate use of force and restraints, and no correctional officer was permitted to work with inmates until and unless such training was successful completed."  Sisneros Aff. ¶ 7, at 1 (citing Policy 8.7.0).  If an employee violates "any policy . . . [he or she] may be subject to disciplinary action, up to and including termination . . . ."  Policy 3.1.22 ¶ 1(C), at 2.

## PROCEDURAL BACKGROUND

Niemyjski filed his Complaint for Damages on November 4, 2003  in the Second Judicial District, Bernalillo County, New Mexico.  Niemyjski filed his claims against the City of Albuquerque, the County of Bernalillo, and "John Does 1 through 4."  In explaining the capacity in which the individuals are sued, the Complaint states:

> Each and all of the acts of the Defendants alleged herein were done by Defendants and each of them, or in conspiracy with other Defendants, not as individuals but under color and pretense of the statutes, ordinances, regulations, customs, and usages of the State of New Mexico, the City of Albuquerque and the County of Bernalillo and under the authority of their position as guards or employees for said City and County.

The best reading of this language is that Niemyjski sued the John Does in their official capacities.[9]  On

---

[9] Even giving a charitable reading to the Complaint by concluding that the John Does are sued in their individual capacities, claims against the John Does "are not cognizable due to their vague and conclusory nature."  Schroder v. Schlatter, No. 98-1396, 1999 WL 166058, at *2 (10th Cir. Mar. 26, 1999)(unpublished decision).  Since filing the Complaint in November, 2003, Niemyjski has not yet named any of the individual John Does.  The termination date for discovery was October 28, 2004, and considering discovery ended over three months ago, it is unlikely that Niemyjski will obtain any new information on the identities of the John Does.  Even if Niemyjski discovers the identity of one

December 1, 2003, the City of Albuquerque and the County of Bernalillo successfully removed the action to federal court.  See Notice of Removal, filed December 1, 2003 (Doc. 1).

Niemyjski brings this action for alleged violations of his rights under the Fourth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and generally references the Constitution of the State of New Mexico.  Specifically, Niemyjski alleges that the Defendants violated his right to be free from unlawful detention and unreasonable use of force, as well as to be free from excessive force during arrest and imprisonment.  Niemyjski further contends that the City negligently failed to train and to supervise the guards to prevent the violation of his constitutional rights.

Pursuant to an Order filed May 27, 2004, the Court has dismissed Niemyjski's Sixth Amendment claim.  See Doc. 11.  The Court also dismissed all claims against the County of Bernalillo.  See id.

The City, as operator of the BCDC, and pursuant to rule 56 of the Federal Rules of Civil Procedure, moves the Court for summary judgment on all claims brought against these two remaining Defendants.

On January 7, 2005, the Court held a hearing on this matter.  The Court properly noticed the

---

or more of the John Does and attempts to name them as parties, the Initial Pretrial Report ("IPTR") states that "[p]laintiff shall join parties . . . by June 30, 2004."  Initial Pretrial Report at 12, filed May 12, 2004 (Doc. 7).  As of February 17, 2005, Niemyjski had not yet attempted to name the John Does, and any attempt to do so at this point would be untimely.  Moreover, Niemyjski has not offered the Court sufficient evidence upon which the identities of John Does 1 through 4 could be ascertained such that they could be served with process.  See Roper v. Grayson, 81 F.3d 124, 126 (10th Cir. 1996)("Courts have generally recognized the ability of a plaintiff to use unnamed defendants so long as the plaintiff provides an adequate description of some kind which is sufficient to identify the person involved so process eventually can be served.").  Thus, even if Niemyjski attempted to sue the guards in their individual capacities, by not naming them and providing insufficient evidence upon which their identities can be ascertained, Niemyjski's claims against the guards are, at this stage in the litigation, a nullity.

January 7, 2004 hearing in the Initial Pre-Trial Report ("IPTR"), filed May 12, 2004 (Doc. 7). At the time the IPTR was entered, however, Niemyjski was represented by counsel, Thomas Grisham. Grisham filed a Motion to Withdraw on September 8, 2004 (Doc. 16), and an Amended Motion to Withdraw on September 10, 2004 (Doc. 17), which the Court granted on September 28, 2004 (Doc. 18).

Niemyjski did not appear in person or telephonically at the hearing on January 7, 2005. The Court heard oral argument from the City at the hearing, but did not rule at that time and took the matter under advisement. See Transcript of Hearing at 7:14-18 (taken January 7, 2005).[10] The Court issued an Order indicating that Niemyjski failed to appear at the hearing and that Niemyjski must contact the Court if another hearing was desired. See Order, filed January 7, 2005 (Doc. 34). On January 13, 2005, the City submitted a Supplement to Defendant City of Albuquerque's Motion for Summary Judgment and Memorandum of Law in Support. See Doc. 36.

Upon Niemyjski's contacting the Court's deputy, Ms. K'Aun Sanchez, the Court held another hearing on this matter on January 18, 2005. At the hearing, however, Niemyjski represented to the Court that he was not prepared to argue in opposition to the City's motion for summary judgment. The Court provided Niemyjski with a copy of all pertinent documents on the motion, and stated that, although it was not going to extend any deadlines at this time, if Niemyjski believed an extension was warranted, he could contact the Court. See Transcript of Hearing at 15:13-19 (taken January 18, 2005). The Court further explained to Niemyjski that it may decide the motion on the papers. See id. at 15:19-21.

---

[10] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any finalized transcript may contain slightly different page and/or line numbers.

On January 31, 2005, Niemyjski submitted an affidavit to the Court, requesting "additional time to prepare [his] case." Affidavit by Tadeusz Niemyjski ¶ 2, at 3 (executed January 31, 2005). Niemyjski did not, however, request an extension in which he could respond to the City's motion for summary judgment. Nevertheless, the Court issued a Minute Order, on February 11, 2005, stating that, if necessary, further argument on the motion for summary judgment would be heard on February 17, 2005. Niemyjski did not appear in person or telephonically for the February 17th hearing. Niemyjski did not contact the Court until the day it issued this opinion.

Niemyjski represented to the Court that he is now proceeding *pro se*. See id. ¶ 3, at 1.

## LAW REGARDING SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure allows a court to grant summary judgment if a party is entitled to judgment as a matter of law and there are no genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To avoid summary judgment, the non-moving party must contradict facts that the movant specifically avers. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

The moving party bears the initial burden of establishing the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. at 323. The moving party can meet the burden by highlighting for the court an insufficiency of evidence as to an essential element of the nonmovant's claim. See id. Once met, the burden shifts to the nonmoving party to present specific, admissible facts from which a rational trier of fact could find for the nonmovant. See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998)(citing Celotex Corp. v. Catrett, 477 U.S. at 324). The non-moving party may not rest on his pleadings, but must set forth specific facts. See Applied Genetics Int'l v. First Affiliated Secs., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). Under

rule 56(e), only statements made with actual knowledge will support a motion for summary judgment; the court must disregard statements of mere belief.  See Tavery v. United States, 32 F.3d 1423, 1426 n.4 (10th Cir. 1994).  "A plaintiff cannot create a triable issue of fact by making an assertion without supporting facts."  Kelley v. Goodyear Tire & Rubber Co., 220 F.3d 1174, 1177 (10th Cir. 2000).

For the purposes of summary judgment, the court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  If "the evidence, interpreted favorably to the plaintiff, could persuade a reasonable jury that the employer had discriminated against the plaintiff[,]" the court should deny summary judgment.  MacDonald v. E. Wyoming Mental Health Ctr., 941 F.2d 1115, 1121 (10th Cir. 1991)(quoting Palucki v. Sears, Robueck & Co., 879 F.2d 1568, 1570 (7th Cir. 1989)).

The court should, however, grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  A "genuine" factual dispute requires the non-moving party to show more than a mere "scintilla of evidence" to overcome a motion for summary judgment.  Id. at 252.

The court may grant summary judgment if the non-moving party's evidence is merely colorable or is not significantly probative.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 250-51.  "In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on

speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52.

Under local civil rule 7.1(b) for the District of New Mexico, "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." D.N.M.LR-Civ. 7.1(b). If the nonmoving party fails to comply with the procedural rules by not responding within the time allowed, the party "waive[s] the right to file a response and confesses all facts asserted and properly supported in the motion." Murray v. City of Tahlequah, 312 F.3d 1196, 1199 (10th Cir. 2002). The court may not, however, grant

> summary judgment . . . merely because [the nonmoving party] failed to file a response. Before the burden shifts to the nonmoving party to demonstrate a genuine issue, the moving party must meet its "initial responsibility" of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law. [Celotex Corp. v. Catrett, 477 U.S. at 322-23].
>
> * * * *
>
> As explained by the Supreme Court in Adickes v. S.H. Kress & Co., 398 U.S. 144, 160-61 . . . (1970), the burden on the nonmovant to respond arises only if the summary judgment motion is properly "supported" as required by Rule 56(c). Accordingly, summary judgment is "appropriate" under Rule 56(e) only when the moving party has met its initial burden of production under Rule 56(c). If the evidence produced in support of the summary judgment motion does not meet this burden, "summary judgment must be denied *even if no opposing evidentiary matter is presented*." Id. at 160 . . . (quoting Fed. R. Civ. P. 56 advisory committee notes to the 1963 amendments) (emphasis added). If the nonmoving party fails to respond, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law. If it has not, summary judgment is not appropriate, for "[n]o defense

to an insufficient showing is required." Id. at 161 . . . .

Id. at 1199-1200.

## MUNICIPAL LIABILITY

There is no concept of strict supervisor liability or respondeat superior for a constitutional

deprivation under § 1983.  See Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997).  A

plaintiff suing a municipality pursuant to § 1983 for the acts of one or more of its employees must

prove: "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal

policy or custom was the moving force behind the constitutional deprivation." Myers v. Okla. County

Bd. of County Comm'rs, 151 F.3d 1313, 1316 (10th Cir. 1998)(citing Monell v. Dep't of Social

Servs., 436 U.S. 658, 694 (1978)).

To establish supervisory or municipal liability, the plaintiff must show that "an affirmative link

exists between the [constitutional] deprivation and either the supervisor's personal participation, his

exercise of control or direction, or his failure to supervise." Meade v. Grubbs, 841 F.2d 1512, 1527

(10th Cir. 1988)(quotations omitted)(alteration in the original).  A municipality cannot be held liable

under § 1983 for an employee's acts if the employee committed no constitutional violation.  See

Myers v. Okla. County Bd. of County Comm'rs, 151 F.3d at 1316.

The Supreme Court of the United States has held that a suit against a person in his or her

official capacity is "'only another way of pleading an action against an entity of which an officer is

an agent.'  . . .  [A]n official-capacity suit is, in all respects other than name, to be treated as a suit

against the entity." Kentucky v. Graham, 473 U.S. 159, 165-66 (1985)(quoting Monell v. N.Y. City

Dep't of Social Servs., 436 U.S. at 690 n.55).

## FOURTH AMENDMENT LAW

The "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396 (1989). The Supreme Court of the United States in Graham v. Connor reasoned that, in excessive force cases:

> "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," Johnson v. Glick, 481 F.2d [1028,] 1033 [(2d Cir. 1973)], violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation.

Id. at 396-97. Relevant factors in determining whether the officer used an objectively reasonable amount of force include, but are not necessarily limited to, the crime's severity, whether the detained person posed an immediate threat to the officer's safety, and whether the subject was resisting arrest. See Wilson v. Meeks, 52 F.3d 1547, 1553 (10th Cir. 1995)(citing Graham v. Connor, 490 U.S. at 396), overruled on other grounds by Saucier v. Katz, 533 U.S. 194 (2001).

## EIGHTH AMENDMENT LAW

The core inquiry for an inmate's Eighth Amendment excessive force claims is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillan, 503 U.S. 1, 7 (1992). The two-prong test for determining whether such force was excessive contains:

> (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials act[ed] with a sufficiently culpable state of mind. The subjective element of an excessive force claim turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. However, as the Court

-14-

subsequently made clear, balancing the need to maintain or restore discipline through force against the risk of injury to inmates occurs where prison officials were using force to keep order.

Giron v. Corr. Corp. of Am., 191 F.3d 1281, 1289 (10th Cir. 1999)(quotations and citations omitted).

### FOURTEENTH AMENDMENT LAW

Under the Fourteenth Amendment substantive due process standard, the factors relevant to whether the use of force is excessive are: "'(1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the . . . officer.'" Latta v. Keryte, 118 F.3d 693, 702 (10th Cir. 1997)(quoting Hannula v. City of Lakewood, 907 F.2d 129, 131-32 (10th Cir.1990)). "Force inspired by malice or by 'unwise, excessive zeal amounting to an abuse of official power that shocks the conscience . . . may be redressed under [the Fourteenth Amendment].'" Id. (quoting Hewitt v. City of Truth or Consequences, 758 F.2d 1375, 1379 (10th Cir. 1985)(alteration in the original).

### 1.    Amount of Force Used and Need Presented.

With regard to the first factor of the substantive due process standard, the force used by the officer must be grossly disproportionate to the need presented to constitute a violation of the Fourteenth Amendment rights.  See Latta v. Keryte, 118 F.3d at 702.  In Latta v. Keryte, the court determined that the officer's use of force was not grossly disproportionate to the need presented.  See id.  The officer in that case attempted to pull the plaintiff over by first engaging his emergency equipment, then bumping the plaintiff's car from behind.  See id. at 701.  The plaintiff swerved his car to prevent the officer from passing, at which point the officer shot out the plaintiff's tires.  See id.  Although the court noted that the officer had used potentially deadly force, it determined that

the force used was not grossly disproportionate to the need presented, which was the protection of the public from a potentially dangerous driver.  See id. at 702.

      **2.**      **Extent of Injuries.**

      With regard to the second factor, the plaintiff must have suffered some physical injury to recover damages stemming from an alleged use of excessive force.  See id. at 702 (noting that the Tenth Circuit has "'never upheld an excessive force claim without some evidence of physical injury'")(quoting Bella v. Chamberlain, 24 F.3d 1251, 1257 (10th Cir. 1994)).

**ANALYSIS**

      The City cannot be held liable under federal law on Niemyjski's claims.  Niemyjski has not alleged, nor has he offered facts, to show governmental liability under 42 U.S.C. § 1983, as no municipal policy or custom caused or contributed to Niemyjski's claims.  The Court will grant summary judgment to the City on his federal claims.

      To establish municipal liability for the alleged conduct of the officers, Niemyjski must "identify a municipal 'policy' or 'custom' that caused" an injury.  Bd. of County Comm'rs v. Brown, 520 U.S. at 403.  In response to Sisneros' affidavit, Niemyjski has not offered evidence that a municipal policy or custom was the moving force behind any violation.  Niemyjski has also not pointed to any fact showing that the City had actual knowledge of a constitutional violation and acquiesced in its continuance.  See Jenkins v. Wood, 81 F.3d 988, 994-95 (10th Cir. 1996).

      In so far as Niemyjski alleges that the guards had inadequate training, this allegation also does not establish a genuine issue of material fact whether there was a municipal policy behind the alleged violation.  In its supplement, the City offers the BCDC Policy, which states that "[s]taff are required to receive training in the legitimate use of force and restraints."  Policy 8.7.0, at 1.  Moreover, in his

sworn affidavit, Sisneros states that "no correctional officer was permitted to work with inmates until and unless such training was successfully completed." Sisneros Aff. ¶ 7, at 1. The City has met its burden of production under Murray v. City of Tahlequah that the guards had adequate training, and Niemyjski has not placed anything in the record to show a genuine issue of material fact on this issue.

Niemyjski has not demonstrated any municipal liability of the City because he has not "identif[ied] a municipal 'policy' or 'custom' that caused" an injury. Bd. of County Comm'rs v. Brown, 520 U.S. at 399. Thus, any claim against the City under § 1983 fails.

Having failed to create a genuine issue of material fact on the municipal policy or custom prong under Monell v. Dep't of Social Servs. and Myers v. Okla. County Bd. of County Comm'rs, the Court need not decide whether the municipal employees committed a constitutional violation. The Court notes, however, that Niemyjski has not pointed to evidence in the record to show that the guards violated his Fourth Amendment right to be free from excessive force when they used force during the initial booking proceedings. From the record before the Court, Niemyjski's actions justified the use of force, and Niemyjski does not point to evidence showing that these guards used an amount of force that was not objectively reasonable. Niemyjski resisted the guards' efforts to process him through basic booking photography procedures. See Niemyjski Depo. at 60:19 - 61:20. Niemyjski also verbally sparred with guards and took issue with their efforts to restrain his legs. See id. at 63:7-17; id. at 64:5 - 65:12; id. at 67:14-17; id. at 68:15-16; id. at 70:1-13.

Federal appellate courts have upheld summary judgment for defendants in cases involving similar physical contact as exists in this case. See Latta v. Keryte, 118 F.3d at 701 (upholding summary judgment where officers physically removed the plaintiff from the vehicle, shackled his arms and legs, and placed him on ground). Accordingly, there was no Fourth Amendment violation based

on the guards' use of force when the photograph was taken and when Niemyjski was returned to the holding cell.[11]

The Defendants are entitled to summary judgment on all federal claims.[12]  Having dismissed all claims on which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c).  Niemyjski is proceeding *pro se* and originally brought his claims in state court.  The Court therefore remands all remaining claims -- all of which sound in state law -- to state court.   See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, 357 (1988)(recognizing that, when "federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims" and concluding that "a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate").

**IT IS ORDERED** that Defendant City of Albuquerque's Motion for Summary Judgment is

---

[11] The Court does not, however, reach whether the guards' treatment of Niemyjski in the stairway landing constituted a violation of his Forth Amendment rights.  Moreover, there is insufficient evidence in the record upon which the Court can resolve the issue whether the guards violated Niemyjski Eighth Amendment rights.  Neither party has identified the guards involved in the alleged incidents; therefore, it is not possible to decide whether there is a genuine issue of material fact that the guards acted with subjective malice.  Similarly, the Court will not decide the Fourteenth Amendment claim, because there is insufficient evidence in the record on which the Court can establish whether the guards acted with improper motive or malice.  Nevertheless, the City is entitled to summary judgment because Niemyjski did not offer any evidence demonstrating that municipal policy or custom was the moving force behind any of the alleged incidents.

[12] An official capacity suit against the guards in their official capacity is equivalent to a suit against the municipality, and so by granting summary judgment in favor of the City, any remaining official capacity claims against the guards are dismissed as well.

granted in part and summary judgment is entered in Defendant City of Albuquerque's favor on all

federal claims.  The Plaintiff's causes of action are dismissed **WITH PREJUDICE** on all federal

claims and all state claims are **REMANDED** to the Second Judicial District, County of Bernalillo,

State of New Mexico.


_____
UNITED STATES DISTRICT JUDGE


Tadeusz Niemyjski
Albuquerque,  New Mexico

      *Plaintiff pro se*

Patrick D Allen
Matthew L. Connelly
Yenson, Lynn, Allen & Wosick, PC,
Albuquerque,  New Mexico

      *Attorneys for Defendant City of Albuquerque*